**SO ORDERED.**

**SIGNED this 06 day of February, 2008.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

OPINION DESIGNATED FOR PUBLICATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| STEVEN J. FOX, | ) | Case No. 05-15882 |
| BRENDA K. FOX, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| LINDA S. PARKS, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 06-5263 |
| | ) | |
| BOEING WICHITA CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |

1

## **MEMORANDUM OPINION**

Plaintiff, Linda S. Parks, trustee of the bankruptcy estate of Steven and Brenda Fox, seeks to recover as a preferential transfer $3,400 paid by Capital One to defendant Boeing Wichita Credit Union by use of a "balance transfer." The trustee and the creditor agreed to submit this matter to the Court on stipulated facts and briefs.[1] Having reviewed those, the Court is now prepared to rule.

### Jurisdiction

The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This adversary proceeding is a core proceeding. 28 U.S.C. § 157 (b)(2)(K).

### Facts

The Foxes filed their bankruptcy case on September 14, 2005.[2] On June 27, 2005, the debtors directed Capital One, with whom they had a credit card account, to issue a balance transfer draft to Boeing Wichita Credit Union for $3,400 to pay down their credit card account there. Before the balance transfer occurred, debtors owed Capital One $2,702.34. Their credit limit was $7,500. On July 5, 2005, the credit union received the draft and credited the $3,400 to the Foxes' account, leaving them owing $80.85. The debtors had made small sporadic payments to the credit union prior to this time.

The stipulations do not specify the particulars of how the balance transfer was initiated or what its terms were. It is clear, however, that the Foxes never had possession or control of the funds.

---

[1] Plaintiff trustee appeared by Scott Hill. Boeing Wichita Credit Union appeared by J. Michael Lehman.

[2] Because the bankruptcy case in which this adversary proceeding is filed was commenced prior to October 17, 2005, unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. §101, et seq. as it was in force prior to that date.

2

<u>Analysis</u>

At issue in this case is whether the debtors' use of available credit from Capital One to pay down another credit card debt constitutes a "transfer of an interest of the debtor in property" that may be avoided as a preference under § 547(b). The bankruptcy courts confronting this issue fall on both sides, but the vast majority of the opinions suggest that when a debtor uses a credit card to transfer the balance of another credit card, that transaction results in an avoidable preference.[3]

In order to recover a preferential transfer, the trustee must demonstrate by a preponderance of the evidence that "a transfer of an interest of the debtor in property" occurred, and that this (1) was for the benefit of a creditor; (2) for or on account of an antecedent debt; (3) was made while the debtor was insolvent; (4) was made on or within 90 days of the date of the petition; and (5) enabled the creditor to receive more than it would have in a chapter 7 case had the transfer not occurred.[4] The parties here only dispute that the balance transfer was a "transfer of an interest" of the debtor; they appear to agree that the transfer meets all five of the enumerated elements set out above.

The trustee correctly notes that "[e]quality of distribution among creditors is a central policy of the Bankruptcy Code."[5] The preference section enforces this policy. Section 547 has "a dual purpose: it prevents individual creditors from dismembering the assets of the debtor in a manner that negatively impacts other creditors, and it allows all creditors to obtain a more equitable distribution

---

[3] *See Flatau v. Walman Optical Co. (In re Werner)*, 365 .R. 283 (Bankr. M.D. Ga. 2007), *Reisz v. Napus Fed. Credit Union (In re Anderson)*, 275 B.R. 264 (Bankr. W.D. Ky. 2002), *Growe v. AT & T Universal Card Serv. (In re Adams)*, 240 B.R. 807 (Bankr. D. Me. 1999), *Lewis v. Providian Bancorp (In re Getman)*, 218 B.R. 490 (Bankr. W.D. Mo. 1998), and *Yoppolo v. Greenwod Trust Co. (In re Spitler)*, 213 B.R. 995 (Bankr. N. D. Ohio 1997).

[4] 11 U.S.C. § 547(b).

[5] *Begier v. I.R.S.*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990).

3

of the assets of the debtor."[6]

The core of the trustee's argument here is that the funds advanced by Capital One could have been used by the debtor for any purpose. Because these funds were available to the debtor, they fall into the broad definition of property of the debtor and their use of these funds to reduce the creditor's debt diminished or depleted the debtor's property, resulting in a nearly complete recovery by the credit union of its antecedent debt and, accordingly a less equitable distribution of the debtor's assets.[7] Arguing that this type of transaction is different from an "earmark," the trustee asserts that Capital One extended credit to the Foxes without the necessary express stipulation that the loaned funds would be used by the debtors to repay the old loan and that the debtors could have used them in any way they wished.[8]

The doctrine of earmarking is a judicially created fiction that provides a "defense" to a claim of preference where a debtor's co-debtor has taken a loan to repay the debtor's obligation to the old creditor. Notwithstanding that the old creditor's debt is repaid in full, this transaction is not a preference because the funds transferred are not "an interest of the debtor in property."[9] In order for a transfer to qualify as an "earmark," three elements must be satisfied: first, the new lender and the borrower must agree that the new funds will be used to repay the old debt; second, that agreement must be performed; and third, the transaction cannot diminish the estate or the return to

---

[6] *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1196 (10th Cir. 2002).

[7] *Manchester v. First Bank & Trust Co. (In re Moses)*, 256 B.R. 641, 645 (10th Cir. B.A.P. 2000).

[8] *Spitler*, 213 B.R. at 998.

[9] *McCuskey v. First Nat'l Bank of Waterloo (In re Bohlen Enterprises, Ltd.)*, 859 F.2d 561, 565 (8th Cir. 1988).

4

the other creditors.[10]  This doctrine was originally limited to co-debtor situations where the new creditor was legally obligated on the debtor's debt.  Courts suggested that if such a payment were avoided, the co-debtor would be exposed to a double payment, resulting in inequity.[11]  This doctrine has been expanded by some courts to cover any occasion when a new lender provides funds for repayment of an old lender's debt.  The logic is that the estate is not diminished because only the payee of the new debt changes while the debtor remains indebted in the same amount and on a debt of the same or similar priority.  The Tenth Circuit Bankruptcy Appellate Panel has limited the availability of the doctrine to co-debtor situations.[12]

Most of the cases relied on by the trustee relate to earmarks and distinguish them from balance transfers because of the lack of a specific condition to the extension of credit that it be paid on the old debt and the fact that the debtors could use the proceeds in other ways.  Several cases provide guidance in this regard.  In *Getman*, the debtor transferred a balance from one credit card to another.  The funds were transferred directly by the new creditor.  That court concluded that none of the elements of an earmark were present.  The debtor could have used the funds to pay any creditor or no creditors.  Because his use of the money was entirely discretionary, the earmarking doctrine did not apply and the transfer was held recoverable.[13]  In *Spitler*, the debtor used a convenience check to effect a balance transfer.  There, the court concluded that the debtor could

---

[10]  *Id.*

[11]  *Id.*

[12]  *Moses*, 256 B.R. at 646-649.

[13]  *Lewis v. Providian Bancorp (In re Getman)*, 218 B.R. 490, 493 (Bankr. W.D. Mo. 1998).

5

have used the money any way he liked.[14]  In *Adams*, the court avoided a similar transfer because it "negatively impacted equal distribution of assets among Adams' creditors."[15]  Collier states, "Similarly, a payment made by a third party to a creditor of the debtor may likewise amount to a preferential transfer when the payment represents a loan by the third party to the debtor and the debtor, rather than the lender, designates the creditor to be paid and controls the application of the loan."[16]

The transaction here is not an earmark.  There is no factual basis for the Court to conclude that debtors' agreement with Capital One required them to apply the funds to their credit union debt. It appears that the debtors had complete discretion in directing the payment.  And, as noted above, persuasive Tenth Circuit authority suggests that in the absence of a pre-existing co-debtor relationship, the earmarking doctrine does not apply.[17]

The credit union argues that this transaction did not diminish the estate, rather it merely substituted Capital One for the credit union.  It relies on two decisions that hold that the availability of credit is not "an interest of the debtor in property," but merely potential wealth.  In *Loveridge v. Ark. of Little Cottonwood, Inc. (In re Perry)*,[18] a bankruptcy court sitting in Utah held that a credit card advance used to pay a pre-existing debt was not preferential as to the old creditor because property of the debtor is only that property which can be reduced by the estate to cash and that the

---

[14]  *Spitler*, 213 B.R. at 998.

[15]  *Growe v. AT & T Universal Card Serv. (In re Adams)*, 240 B.R. 807, 812 (Bankr. D. Me. 1999).

[16]  *5 Collier on Bankruptcy*, ¶ 547.03[2], p. 547-25 (15th ed.rev. 2007).

[17]  *Moses*, 256 B.R. at 646.

[18]  343 B.R. 685 (Bankr. D. Utah 2005).

6

payment was not a transfer of debtor's interest.[19]  In this district, United States Bankruptcy Judge Dale Somers relied in part on *Perry* when he held in *Parks v. FIA Card Servs., N.A. (In re Marshall)* that a balance transfer such as that at bar did not constitute a transfer of debtor's property.[20]  He based that holding on the facts that the debtor accepted an offer by Capital One to transfer credit card balances and that the debtor never had possession or control of the funds.  Finding that the transaction in no way implicated an interest of the debtor or diminished the estate, he held that "[c]redit is not an interest available for satisfaction of creditors' claims in bankruptcy.  Neither Debtors' assets nor their liabilities changed."[21]  Judge Somers also noted that a debtor's right to an extension of credit is not property of the estate because § 365(c)(2) prevents trustees from assuming such agreements post-petition.[22]  As noted above, *Marshall* and *Perry* are in the extreme minority of cases on this point.

This Court respectfully disagrees with the *Perry* and *Marshall* courts.  The two minority cases focus on the fact that the debtor's estate is undiminished by balance transfers, but do not reckon with the fact that, in both cases, the old creditor is paid far more than it would receive in a chapter 7 case, while the new lender is left to share in whatever remains in the estate post-petition.  Thus, while the percentage dividend may not be changed by a balance transfer, the presumably unsuspecting new creditor's position changes markedly.  This ignores the second leg of preference policy: maintaining an equitable distribution of the debtor's assets.  As the *Getman* court has stated:

---

[19]  *Id.* at 688.

[20]  372 B.R. 511  (Bankr. D.Kan. 2007).

[21]  *Id.* at 515.

[22]  *Id.* at 516, fn. 18.

7

That argument [that the estate is undiminished] ignores the substance of this transaction. Mr. Getman drew upon funds that he could have used to pay all creditors equitably, and made those funds available to pay two creditors. As the Eighth Circuit said, in cases where the new creditor is not a guarantor, the "only person aided by the doctrine is the old creditor, who had nothing to do with earmarking the funds, and who, in equity, deserves no such benefit."[23]

That does not yield the equality of distribution that is the hallmark policy of the Bankruptcy Code.[24]

Accordingly, this Court concludes that the transaction at bar constituted an avoidable transfer which may be recovered from the credit union by the trustee and preserved for the benefit of the estate. Judgment should therefore be entered for the trustee, Linda S. Parks, and against Boeing Wichita Credit Union. A Judgment on Decision will issue this day.

# # #

---

[23] *Lewis v. Providian Bancorp (In re Getman)*, 218 B.R. 490, 493 (Bankr. W.D. Mo. 1998) (citing *Bohlen*, 859 F.2d at 566).

[24] *Begier v. I.R.S.*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990).

8